**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
SUGERMAN DAHAB
101 SW Main Street Ste. 910
Portland, OR 97204
Tel: (503) 228-6474
david@sugermandahab.com
nadia@sugermandahab.com

*Attorneys for Plaintiffs*
*(Additional counsel listed on signature page.)*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MARTIN LYNCH, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MULTNOMAH COUNTY, et al., <br><br> Defendants. | Case No. 3:23-cv-01502-IM (lead case) <br><br> **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT WITH DEFENDANT CLACKAMAS COUNTY** <br><br> ORAL ARGUMENT REQUESTED |

## <u>TABLE OF CONTENTS</u>

LOCAL RULE 7-1 CERTIFICATION ........................................................................ 1

MOTION .................................................................................................................... 1

MEMORANDUM IN SUPPORT ............................................................................... 2

    INTRODUCTION ................................................................................................... 2

    BACKGROUND .................................................................................................... 4

        I.    Procedural History ...................................................................................... 4

        II.   Factual and Legal Background ..................................................................... 5

        III.  The Proposed Schedule for Approval of the Settlement ........................................ 7

        IV.  Terms of the Settlement ............................................................................... 7

        V.   Notice of the Settlement .............................................................................11

    ARGUMENT ........................................................................................................11

I.    The Settlement Merits Preliminary Approval ....................................................11

        a.    The Standards Governing Preliminary Approval of a Class Action Settlement.. 12

        b.    The Settlement Should be Given a Presumption of Fairness Because it is The Result of Non-Collusive, Informed, Arm's-Length Negotiations. ...................... 14

        c.    The Settlement Does Not Suffer From Any Obvious Deficiencies .................... 16

        d.    The Settlement Does Not Improperly Grant Preferential Treatment to The Class Representatives or Segments of the Class. ......................................................... 17

        e.    The Settlement Falls Within The Range of Possible Approval .......................... 18

II.   The Court Should Make a Preliminary Determination That The Proposed Settlement Class Satisfies The Standard For Certification Under Rule 23. .................................. 19

        a.    The Rule 23(a) Requirements Are Met. ............................................................ 19

            i.    The Settlement Class is so Numerous That Joinder is Impractical .............. 19

            ii.   Common Issues Exist ............................................................................... 20

            iii.  The Settlement Class Representative's Claims Are Typical of Those of The Other Settlement Class Members .................................................................. 21

            iv.  The Settlement Class Representative and Class Counsel Can Adequately Represent The Class. ................................................................................... 22

        b.    The Rule 23(b)(3) Requirements For a Settlement Class Are Met. .................... 23

            i.    Common Questions of Law or Fact Predominate ........................................ 23

            ii.   The Class Action Mechanism is Superior to Other Methods of Adjudication. 25

i

III.    The Form and Method of Notice Should be Approved........................................ 25

CONCLUSION......................................................................................................... 28

**TABLE OF AUTHORITIES**

## Cases

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015)..................................................................... 16

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)........................................................... 17

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) ........................................ 28

*Bell v. Consumer Cellular, Inc.*, No. 3:15-cv-941-SI, 2017 WL 2672073 (D. Or. June 21, 2017)20

*Chahalem Phys. Therapy v. Coventry Health Care, Inc.*, No. 3:09-CV-00320-HU, 2014 WL
4373150 (D. Or. Sept. 3, 2014)........................................................................................ 22

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566 (9th Cir. 2004) ...................................................... 31

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ...................................................................... 28

*Costelo v. Chertoff*, 258 F.R.D. 600 (C.D. Cal. 2009)............................................................. 26

*Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930 (N.D. Cal. 2016)...................................................... 17

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) ............................................ 20

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ........................................ 25, 26, 27

*Fosbre v. Las Vegas Sands Corp.*, No. 2:10-CV-00765-APG-GWF, 2015 WL 3722496 (D. Nev.
June 15, 2015)................................................................................................................ 30

*Fraser v. ASUS Computer Int'l*, No. C 12–00652 WHA, 2012 WL 6680142 (N.D. Cal. Dec. 21,
2012) ............................................................................................................................ 22

*Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377 (D. Or. 1996) ...................................... 26

*Granados v. Onpoint Comm. Credit* Union, No. 3:21-cv-847-SI, 2025 WL 1640204 (D. Or. June
10, 2025) ...................................................................................................................... 22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................................. passim

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)..................................................... 26

*Hurst v. First Student, Inc.*, No 3:15-cv-00021-HZ, 2015 WL 6437196 (D. Or. Oct. 22, 2015).. 26

*In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935 (9th Cir. 2011) ............................. 21

*In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2014 WL 3917126 (N.D. Cal.
2014) ............................................................................................................................ 17

*In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019)...................................... 24

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ........................................... 18, 23

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)......................................................... 19

*In re Syncor, ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008)......................................................... 16

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007)................................. 17, 23

*In re Volkswagen "Clean Diesel" Mtkg., Sales Practices & Prods. Liab. Litig.*, MDL No 2672
CRB (JSC) 2017 WL 672727 (N.D. Cal. Feb. 16, 2017) ...................................................... 17

*In re Zynga Sec. Litig.*, No. 12-CV-04007- JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015). 22

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014) .................................................... 25, 26

*Johnson v. Quantum Learning Network*, No. 15-CV-05013-LHK, 2016 WL 4529607 (N.D. Cal. Aug. 30, 2016) ................................................................................................................ 18

*Lusby v. Gamestop, Inc.*, 297 F.R.D. 400 (N.D. Cal. 2013) ......................................................... 18

*Medearis v. Or. Teamster Emplrs. Tr.*, No. CV. 07-723-PK, 2009 WL 1788183 (D. Or. June 19, 2009) ...................................................................................................................... 19

*Moss v. U.S. Secret Serv.*, No. 1:06–cv–3045–CL, 2015 WL 5705126 (D. Or. Sept. 28, 2015) . 24, 25, 28

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............. 16, 19

*Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009)..... 19

*O'Shea v. Am. Solar Solutions, Inc.*, 318 F.R.D. 633 (S.D. Cal. 2017)........................................ 30

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ............................. 16, 23

*Ontiveros v. Zamora*, 303 F.R.D. 356 (E.D. Cal. 2014) ............................................................... 31

*Pecover v. Elec. Arts Inc.*, No. C 08–2820 VRW, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) 25

*Pokorny v. Quixtar Inc.*, No. 07–0201 SC, 2011 WL 2912864 (N.D. Cal. July 20, 2011).......... 21

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)................................................... 19

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994)............................................................................ 31

*Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391 (N.D. Cal. 2005)...................................... 26

*Smith v. Am. Greetings Corp.*, No. 14-cv-02577-JST, 2015 WL 4498571 (N.D. Cal. July 23, 2015) ...................................................................................................................... 19

*Stanton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................................................. 17

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011)................................................... 28

*Sullivan v. Kelly Servs.*, 268 F.R.D. 356 (N.D. Cal. 2010)........................................................... 26

*Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) ................................................. 29

*Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631 (2023) ..........................................................11

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ............................................................ 28

*Viceral v. Mistras Grp., Inc.*, No. 15-CV02198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ...................................................................................................................... 23

*Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307 (D. Or. 2017)................ 24, 25

*Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2015 WL 4760464 (N.D. Cal. Aug. 12, 2015) ................................................................................................................ 20

*Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012)........................................................................................................... 23

*WalMart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................. 25

ii

*Walter v. Hughes Commc'ns, Inc.*, No. 09–2136 SC, 2011 WL 2650711 (N.D. Cal. July 6, 2011) ........................................................................................................................................... 22

*West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006) ........................................................................................................................... 22

*Woody v. Fred Meyer Stores, Inc.*, No. 3:22-cv-01800-HZ, 2024 WL 4528220 (D. Or. Oct. 17, 2024) .................................................................................................................................. 17, 18

**Statutes**

ORS 275.090 ............................................................................................................................. 13

ORS 275.275 ....................................................................................................................... 13, 25

**Rules**

Fed. R. Civ. P. 23(a)(1) ............................................................................................................ 22

Fed. R. Civ. P. 23(a)(3) ............................................................................................................ 24

Fed. R. Civ. P. 23(b)(3) ............................................................................................................ 26

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................. 28, 29

**Treatises**

4 Newberg on Class Actions (5th ed.) ....................................................................................... 20

## LOCAL RULE 7-1 CERTIFICATION

Clackamas County consents to this motion and to the entry of the proposed order preliminarily approving the settlement, conditionally certifying the class for settlement purposes, approving the form and manner of class notice, and setting a date for the final approval hearing.

## MOTION

Plaintiffs move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for preliminary approval of the proposed class action settlement with Defendant Clackamas County ("Clackamas" or the "County"). In support of this motion, Plaintiffs rely upon the following Memorandum in Support.

Plaintiffs request that the Court hold oral argument on the motion so that the Parties can answer any questions the Court may have regarding the proposed settlement. Clackamas consents to this motion and to the entry of the proposed order preliminarily approving the settlement, conditionally certifying the class for settlement purposes, approving the form and manner of class notice, and setting a date for the final approval hearing.

For the reasons set forth in the attached Memorandum in Support, Plaintiffs ask that the Court enter an Order in the form attached hereto as Exhibit 1(D) and agreed to by the settling parties granting preliminary approval to the Settlement so that notice of the terms of the Settlement may be given to Settlement Class Members, and that the Court schedule a hearing to consider: (1) final approval of the Settlement; (2) certification of the Settlement Class; (3) Class Counsel's request for an award of attorneys' fees, litigation costs and expenses, and a service award to the Class Representative; (4) entry of final judgment; and (5) any other matters the Court may deem appropriate.

## MEMORANDUM IN SUPPORT

### INTRODUCTION

Plaintiffs seek recovery for themselves and on behalf of class members whose tax-foreclosed properties were taken by Defendant Counties and either sold for an amount that exceeds the tax debt or retained by the county. Plaintiffs allege that Clackamas and the other Defendant counties violated the class members' constitutional rights by retaining the value of tax-foreclosed property in excess of the delinquent taxes owed (the "Surplus Proceeds").

Plaintiffs are confident in the merits of their claims, but they recognize the various risks, delays, and costs associated with further litigation. Accordingly, Plaintiffs have expended significant effort working with Clackamas towards a resolution of this dispute. Following lengthy and extensive arm's-length negotiations, Plaintiffs and Clackamas  have reached a class settlement to resolve this dispute (the "Settlement"), as set forth in the Settlement Agreement attached as Exhibit 1. The Settlement will result in payment into a common fund (the "Settlement Fund") by Clackamas of an amount representing 100% of the Surplus Proceeds obtained by Clackamas, plus interest. Initially, Clackamas will pay $2,466,403.68 into the common fund, representing 100% of the Surplus Proceeds generated regarding Eligible Properties that have been already been sold by Clackamas, plus accrued interest. For Potential Eligible Properties that have not yet been sold, Clackamas will continue to auction such properties, in good faith and accordance with Oregon law. For Eligible Properties that are sold before the expiration of the claims period, Clackamas will promptly pay all Surplus Proceeds into the Settlement Fund. For Potential Eligible Properties that are not sold by the expiration of the claims period, Clackamas shall continue to make good faith efforts to sell such properties. If Clackamas sells Eligible Properties after the expiration of the claims period, it shall undertake to

PAGE 2 - PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT WITH DEFENDANT CLACKAMAS COUNTY

notify all Settlement Class Members with an interest in the property, so that they may seek their share of such Surplus Proceeds, and will pay qualifying claimants their share of the Surplus Proceeds. After the costs of notice, claims administration and Court approved attorneys' fees, litigation costs and expenses, and a service award are paid out of the Settlement Fund, each Settlement Class Member that submits a valid and timely claim will be eligible for a payment. Depending on the total amount of valid, approved claims, each Settlement Class Member who submits a valid claim may receive up to the full amount of the Surplus Proceeds applicable to the Settlement Class Members' Eligible Property, plus interest on the Surplus Proceeds from the expiration date of redemption period for their property through the date of the Settlement Agreement.[1]

Plaintiffs now seek: (1) preliminary approval of the Settlement; (2) certification of a Settlement Class for purposes of implementing the proposed Settlement; (3) appointment of Class Counsel[2] for the proposed Settlement Class; (4) approval of Kroll Settlement Administration ("Kroll") as the Claims Administrator; (5) approval of the form and content of the notice plan; and (6) entry of the Proposed Order Preliminarily Approving Settlement and Providing for Notice (attached as Exhibit 1(D)). The Proposed Preliminary Approval Order follows the structure and schedule contained in the Court's order preliminarily approving the settlement with Multnomah County in this action entered on July 16, 2025 (ECF 150).

---

[1]     "Eligible Claim," "Settlement Class," and all other undefined capitalized terms have the meanings ascribed to them in the Settlement Agreement, which is attached as Exhibit 1.

[2]     "Lead Counsel" refers to Fink Bressack; Kohn, Swift & Graf, P.C. and Preti, Flaherty, Beliveau & Pachios, Chartered, LLP. "Liason Counsel" refers to Sugerman Dahab. Together, these four law firms are designated "Class Counsel" in the Settlement.

PAGE 3 - PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT WITH DEFENDANT CLACKAMAS COUNTY

This Court should preliminarily approve the Settlement with Clackamas under the well-established standards in the Ninth Circuit for approval of class settlements pursuant to Rule 23: Plaintiffs and their counsel have proven to be adequate representatives; the Settlement resulted from an extensive, arm's length negotiation; the Settlement affords Settlement Class Members substantial, significant, and immediate relief; the Settlement treats Settlement Class Members equitably; Plaintiffs' and their counsel's endorsement of the Settlement is entitled to significant weight; and the public interest in settling class actions supports approval of the Settlement. Plaintiffs and their counsel have effectively litigated their claims, including successfully opposing motions to dismiss the Complaint and have negotiated a substantial settlement with Clackamas. The Settlement would yield an excellent recovery for the Settlement Class and each Settlement Class member, as it results in recovery of the entire Surplus Proceeds attributable from the sale by Clackamas of the properties, plus interest. In short, the proposed Settlement was negotiated at arm's-length by competent and experienced counsel and provides a substantial benefit to each member of the Settlement Class. For these reasons the Settlement is clearly within the range of fairness and reasonableness required for preliminary approval.

## BACKGROUND

### I.    Procedural History

Plaintiffs filed their initial Complaint in this action on October 12, 2023 against Multnomah County, Lane County and Yamhill County (the "*Lynch*" action), making this one of the first actions seeking to recover Surplus Proceeds on behalf of former owners of tax-foreclosed properties in Oregon. On December 28, 2023, Plaintiffs filed the *Sawyer* action against Marion County, Clackamas and several State officials. Case No. 3:23-cv-01971-SB, ECF 1. On March 1, 2024, Plaintiffs filed a motion seeking to consolidate *Lynch* with *Sawyer*. ECF

44. On April 8, 2024, Court granted the Motion to consolidate *Lynch* and *Sawyer*, with *Lynch* designated as the lead case. ECF 65. On March 20, 2024, Defendant Lane County filed a Motion to Dismiss the First Amended Complaint (ECF 54), which was later joined by Clackamas (ECF 68) and Yamhill County (ECF 70). On July 19, 2024, Plaintiffs filed a Motion seeking leave to file a consolidated amended complaint, which would include all the parties and claims in the *Lynch* and *Sawyer* actions. ECF 108. On December 27, 2024, the Court entered an Order granting in part and denying in part the Motion to Dismiss and granting Plaintiffs' Motion for leave to file a consolidated amended complaint. ECF 121. On January 17, 2025, Plaintiffs filed the operative First Amended Consolidated Complaint ("Consol. Complaint"). ECF 122. On February 13, 2025, Clackamas filed its answer to the First Amended Consolidated Complaint. ECF 128. On February 27, 2025, the Court issued an Order directing the parties to submit briefs regarding whether the Court should exercise supplemental jurisdiction over the state law claims asserted in the First Amended Consolidated Complaint. ECF 136. On March 13, 2025, Plaintiffs filed a Motion to consolidate *Lynch* and *Sawyer* with the related *Gabbert v. Josephine County* (Case No. 1:23-cv-01434-IM) ("*Gabbert*") and *Baker v. Baker County* cases (Case No. 2:24-cv-01503-IM) ("*Baker*"). ECF 140. On May 27, 2025, the Court entered an Order granting the Motion to consolidate *Lynch* and *Sawyer* with *Gabbert* and *Baker* and determining that the Court would exercise supplemental jurisdiction over Plaintiffs' state-law claims in *Lynch* and *Sawyer*. ECF 145.

## II.     Factual and Legal Background

Plaintiff Christopher Ferretti owned a residential property a 39555 Stefanee Court, Sandy, Oregon 97055 (the "Ferretti Property"). Consol. Complaint, ECF 122, ¶ 33. In 2017, Clackamas filed a complaint to foreclose upon the Ferretti Property due to overdue taxes, fees

and interest in the amount of $4,711.85. *Id*. ¶ 34. Clackamas then sold the Ferretti Property for

approximately $38,000.00.  *Id*. ¶ 35. Clackamas did not return the difference between the

accumulated taxes, penalties and fees and the sale price, which amounted to approximately

$33,288.15 to Christopher Ferretti, nor did it offer any process by which Ferretti could claim the

Surplus Proceeds. *Id*. ¶¶ 36-38. Plaintiff Brent Dorrell, through his entity, Organizer Systems

Management, LLC, purchased the property listed in the County's records as Property Account

No. 00579029 (the "Dorrell Property") for $450,000.00 in 2003. *Id*. ¶¶ 40-41. After the Dorrell

Property accumulated approximately $1,226.62 in overdue taxes and fees, Clackamas instituted

foreclosure proceedings. *Id*. ¶¶ 42-43. Clackamas retained the Dorrell Property and did not return

the Surplus Proceeds, or offer any procedure to claim the Surplus Proceeds, despite the County's

records indicating that the value of the Dorrell Property exceeded $1,226.62. *Id*. ¶¶ 44-50.

Plaintiff Baltazar Ortiz owned a property identified in the County's records as 26E20CC00100,

Property No. 00706917, Legal Description: 409 ALDER CREK SUMMER HMS PT LT 6 (the

"Ortiz Property"). *Id*. ¶ 52. Clackamas foreclosed upon the Ortiz Property and did not return the

Surplus Proceeds, or offer any procedure to claim the Surplus Proceeds, despite its retention of

the Ortiz Property. *Id*. ¶¶ 53-56

    In *Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631, 648 (2023), the Supreme Court

considered whether it was unconstitutional for the government to retain the surplus proceeds

from tax foreclosure sales—the same Oregon practice being challenged in this case. The

Supreme Court unanimously held that keeping surplus proceeds violates the Fifth Amendment's

Takings Clause when no opportunity to obtain the surplus is provided and one Justice argued that

the practice also violates the Excessive Fines Clause of the U.S. Constitution. *Id.* at 639–648.

This lawsuit was filed to vindicate the rights (including those under the Fifth Amendment and

the Oregon Constitution) of property owners in Oregon under the Supreme Court's holding in the *Tyler* case.

## III.    The Proposed Schedule for Approval of the Settlement

The settling parties have agreed to request the Court to enter the Proposed Order Preliminarily Approving Settlement (the "Order") (Ex. 1(D)), which provides the following:

(1)    Within forth-five (45) days of entry of the Order, notice to the Settlement Class shall be mailed and published. (Order, ¶ 11).

(2)    A Motion for Final Approval of the Settlement and a Motion for Attorney's Fees shall be filed no later than thirty (30) days after the notice is mailed and published. (Order, ¶ 19).

(3)    No later than sixty (60) days after the notice is mailed and published, Class Members must submit any requests for exclusion ("opt-outs") from the Settlement Class, or submit any objections to the Settlement. (Order, ¶ 13).

(4)    Any objections to the Settlement or Motion for Attorneys' Fees shall be filed by Class Counsel with the Court at least 14 days prior to the date for the Final Approval Hearing. (Order, ¶ 16).

(5)    All Claims must be submitted within 180 days after entry of the Order. (Order, ¶ 12).

(6)    Scheduling the Final Approval hearing at the Court's convenience (Order, ¶ 20).

## IV.    Terms of the Settlement

The Settlement is a common-fund settlement, which provides for payment of at least $2,466,403.68 by Clackamas into the Settlement Fund in consideration for a release of claims in this litigation. Settlement ¶¶ 11-12, 37. The Settlement Amount was calculated by determining the total Surplus Proceeds for the current Eligible Properties, which equals $1,817,303.46. *id.* ¶ 11, plus an additional negotiated amount of $649,100.22 in consideration of Plaintiffs' claims for pre-judgment interest, costs and fees. *Id.* For Eligible Properties that have not yet been sold, Clackamas shall continue to auction those properties reasonably, in good faith and in accordance

with Oregon law. *Id*. ¶ 13. For Eligible Properties sold prior to the expiration of the claims period, Clackamas shall promptly pay into the Settlement Fund the Surplus Proceeds generated by those sales. *Id*. For Eligible Properties that are not sold by the expiration of the Claims Period, Clackamas shall undertake good faith efforts to sell such properties. If Surplus Proceeds are generated by any such sales, Clackamas shall notify all Settlement Class Members with an interest in the property, so that they may seek their share of the Surplus Proceeds through a process reasonably determined by the County. *Id*. ¶ 14. Class Counsel will not seek attorney fees or reimbursement of expenses regarding Surplus Proceeds generated after the expiration of the claims period and the Claims Administrator is not responsible for handling claims regarding such Surplus Proceeds. *Id*.

After the costs of notice, claims administration and approved attorneys' fees, litigation costs and expenses, and service awards to the Class representatives are paid from the Settlement Fund, each Settlement Class Member that submits a valid and timely claim will be eligible for a payment equal up to the full amount of the Surplus Proceeds applicable to the Class Members' Eligible Property, plus accrued interest. *Id*. ¶ 16. In the event that the total amount of approved claims exceeds the amount available for distribution from the Settlement Fund, then all approved claims will be reduced pro-rata. *Id*. Under the Settlement, Plaintiffs' counsel will file a motion with this Court for a fee award not to exceed 30% of the Settlement Fund. *Id*. ¶ 34. The costs of notice and claims administration, in an amount not to exceed $150,000, will be paid out of the Settlement Fund. *Id*. ¶ 16(a). Any remaining amount in the Settlement Fund after the above-described disbursements are made will be distributed first to reimburse Clackamas for any payments of Surplus Funds it makes to any Settlement Class Member that requests exclusion ("opt-outs") from the Class and is paid prior to the end of the claims period. *Id*. ¶ 16(e). Any

PAGE 8 - PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS
ACTION SETTLEMENT WITH DEFENDANT CLACKAMAS COUNTY

funds remaining after that will be paid *cy pres* to fund housing placement and support services, rental assistance and/or development of new affordable housing for youth and families with children pursuant to ORS 275.275 and ORS 275.090, or such other programs as the parties agree and the Court approves in accordance with Oregon law. *Id*. ¶ 16(f). The Settlement Class is defined as:

> All Persons and entities, and their heirs, successors and assignees, who owned, or had an ownership interest in, or a valid lien on real property that Defendant Clackamas County obtained through a foreclosure action to satisfy unpaid real estate taxes or other County or local government taxes and fees and associated fees and penalties, as set forth in the schedule attached hereto as Exhibit A, which the County (1) sold for an amount in excess of the unpaid taxes, fees and other costs associated with that property, and for which the statutory redemption period expired during the Class Period, or (2) which the County still owns as of the execution date of this Settlement Agreement and may sell for an amount in excess of the unpaid taxes, fees and other costs associated with that property, and for which the statutory redemption period expired during the Class Period.

*Id*. ¶ 2. An "Eligible Property" is a parcel of real property foreclosed by Clackamas for the non-payment of real-property taxes or other County or local government taxes or fees, which was, or is, sold by the County for an amount in excess of the unpaid taxes, fees and other costs associated with that property, and for which the statutory redemption period expired during the Class Period. *Id*. ¶ 1(s). A "Potential Eligible Property" is a parcel of real property foreclosed by Clackamas County for the non-payment of real-property taxes or other County or local government taxes or fees, which has not yet been sold by the County, but may be sold by the County for an amount in excess of the unpaid taxes, fees and other costs associated with that property, and for which the statutory redemption period expired during the Class Period. *Id*. ¶ 1(y).  The "Class Period" is October 12, 2017 through the date of the Settlement Agreement. *Id*. ¶ 1(k).

Settlement Class Members will have 180 days following preliminary approval of the Settlement to submit a completed Claim Form to the Claims Administrator. *Id*. ¶ 29. The Claim Form will require claimants to provide sufficient information for the Claims Administrator and the parties to assess whether the person submitting the claim is a Settlement Class Member. *Id*. ¶ 28. Further, "[a]s to each Claim asserting an unrecorded interest in an Eligible Property, the person submitting the claim shall be required to submit an affidavit or declaration setting forth all the factual and legal bases for the asserted unrecorded interest." *Id*. ¶ 31. Likewise, "[w]ith regard to claims of an interest in an Eligible Property through adverse possession, the affidavit or declaration shall set forth facts to show all of the elements of adverse possession under Oregon law." *Id*. In the event any Settlement Class Member disagrees with the Settlement, he or she may opt out of the Settlement Class or file an objection to its terms. *Id*. ¶ 4(b).

After the Claims Administrator receives Claims, it will determine which Claims are Eligible Claims, with assistance from the parties as necessary. *Id*. ¶ 31. Payments will then be made to Eligible Claimants from the Settlement Fund. *Id*. ¶ 16(d). For circumstances in which there are multiple Eligible Claims as to one property that cannot be resolved by the Claimants and/or the Claims Administrator, it is provided that Eligible Claimants can have a Special Master allocate the proceeds. *Id*. ¶ 32. The costs associated with the Special Master will be paid out of the Settlement Fund. *Id*. ¶ 14(b).

Clackamas has agreed not to object to the request for Preliminary Approval of the Settlement Class solely for settlement purposes. *Id*. ¶ 2. However, if the Settlement is not finally approved as provided in the Settlement, the Settlement will not in any way prejudice Clackamas's (or any other Defendant County's) right to contest class certification. *Id*. ¶ 6.

PAGE 10 - PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT WITH DEFENDANT CLACKAMAS COUNTY

### V.    Notice of the Settlement

Under the Settlement, within 45 days of the entry of an Order granting preliminary approval of the Settlement, Class Counsel will, through the Claims Administrator, send to Class Members the proposed Long Form Notice (attached hereto as Exhibit 1(B)) via regular first-class U.S. mail postage pre-paid. *Id*. ¶ 22. The Claims Administrator will attempt to locate addresses for potential Class Members, and if a Class Member is determined to be deceased, the Claims Administrator will attempt to locate potential heirs. *Id*. ¶¶ 22-23.

The Claims Administrator will also provide notice by publication of the Summary Notice (in the form attached hereto as Exhibit 1(C)) pursuant to the terms of a publication plan in traditional and social media designed to target potential Class Members in a cost-effective manner. A link to the Summary Notice will be published on its website. *Id*. ¶ 24.

The Claims Administrator will establish a website for the Settlement that will at a minimum contain the Class Notices, Claim Forms, Settlement Agreement and relevant pleadings and motions filed in the litigation. The Defendant and Plaintiffs' Counsel shall establish links on their websites to the settlement website. *Id*. ¶ 25.

### ARGUMENT

### I.    The Settlement Merits Preliminary Approval

Under Rule 23(e) of the Federal Rules of Civil Procedure, court approval is required to settle a class action. "Approval under [Rule] 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 525 (C.D. Cal. 2004). This Motion addresses the first step—preliminary approval.

PAGE 11 - PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT WITH DEFENDANT CLACKAMAS COUNTY

a.    **The Standards Governing Preliminary Approval of a Class Action Settlement.**

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements. There is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quotation marks omitted); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution…especially…in complex class action litigation."). As the Ninth Circuit has explained, "[t]he purpose of Rule 23(e) is to protect unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor, ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a court approves a settlement, it must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "Some district courts…have stated that the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.'" *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2014 WL 3917126, at *3 (N.D. Cal. 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). "In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiffs expected recovery balanced against the value of the settlement offer." *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (quotation marks omitted).

"When parties arrive at a settlement before class certification, 'courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.'" *Woody v. Fred Meyer Stores, Inc.*, No. 3:22-cv-01800-HZ, 2024 WL 4528220, at *1 (D. Or. Oct. 17, 2024) (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)).

PAGE 12 - PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT WITH DEFENDANT CLACKAMAS COUNTY

Preliminary approval of a class action settlement requires a two-step inquiry. *In re Volkswagen "Clean Diesel" Mtkg., Sales Practices & Prods. Liab. Litig.*, MDL No 2672 CRB (JSC) 2017 WL 672727, at *12 (N.D. Cal. Feb. 16, 2017). At the first step, the court must decide whether a class exists. *Staton*, 327 F.3d at 952. "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

"[T]he preliminary approval stage [i]s an 'initial evaluation' of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties." *In re High-Tech Emp.*, 2014 WL 3917126, at *1. A court need not conduct a complete analysis of the fairness factors at this time because "some of the 'fairness' factors cannot be fully assessed until the Court conducts the final approval hearing[.]" *Lusby v. Gamestop, Inc.*, 297 F.R.D. 400, 412 (N.D. Cal. 2013). Instead, "[p]reliminary approval of a settlement and notice to the class is appropriate if '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval.'" *Johnson v. Quantum Learning Network*, No. 15-CV-05013-LHK, 2016 WL 4529607, at *1 (N.D. Cal. Aug. 30, 2016) (quoting *In re Tableware*, 484 F. Supp. 2d at 1079). The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge[.]" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (quotation marks omitted). All of the preliminary approval factors are met here.

With respect to preliminary approval, district courts must also consider the factors set

forth in Rule 23(e)(2). *Woody*, 2024 WL 4528220, at *2.

> **(2) *Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> **(A)** the class representatives and class counsel have adequately represented the class;
>>
>> **(B)** the proposal was negotiated at arm's length;
>>
>> **(C)** the relief provided for the class is adequate, taking into account:
>>
>>> **(i)** the costs, risks, and delay of trial and appeal;
>>>
>>> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>>
>>> **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
>>>
>>> **(iv)** **(iv)** any agreement required to be identified under Rule 23(e)(3); and
>>
>> **(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). As discussed below, the Rule 23(e) factors are also met here.

**b.    The Settlement Should be Given a Presumption of Fairness Because it is The Result of Non-Collusive, Informed, Arms'-Length Negotiations.**

As the Ninth Circuit has stated, "[w]e put a good deal of stock in the product of an arm's

length, non-collusive, negotiated resolution." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965

(9th Cir. 2009); *Medearis v. Or. Teamster Emplrs. Tr.*, No. CV07-723-PK, 2009 WL 1788183, at

*3 (D. Or. June 19, 2009) (quoting *Rodriguez*). "Parties represented by competent counsel are

better positioned than courts to produce a settlement that fairly reflects each party's expected

outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Nat'l*

*Rural Telecomms. Coop*, 221 F.R.D. at 528 (quoting *In re Pac. Enters*). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528. Accordingly, as is the case here, where counsel are experienced and support a settlement that was the result of arm's-length negotiations, there is an initial "presumption that the agreement is fair." *Smith v. Am. Greetings Corp.*, No. 14-cv-02577-JST, 2015 WL 4498571, at *6 (N.D. Cal. July 23, 2015); *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *6 (N.D. Cal. June 29, 2009).

First, the Settlement arises out of extended, informed, arm's-length negotiations between experienced counsel. Here, the parties have engaged in twenty months of litigation, have negotiated the Settlement over several months, beginning in August 2025 and gaining intensity in September and October 2025 with the exchange of multiple drafts of the agreement, class notices and claim form. The Plaintiffs were represented by a member of each of the three proposed Lead Counsel Firms, and Defendant was represented by the Clackamas Attorneys' Office.

Second, there is no evidence of conflicts of interest or collusion between or among the parties in crafting the Settlement. *Bell v. Consumer Cellular, Inc.*, No. 3:15-cv-941-SI, 2017 WL 2672073, at *7 (D. Or. June 21, 2017).

Here, the Settlement does not bear any characteristics of collusion. The proposed method of allocation provides that the Class Representative is entitled to the same relief (*i.e.*, the full value of the Surplus Proceeds taken by the County, plus accrued interest) as all other Class Members. Settlement ¶¶ 16(d). Next, any fees awarded by this Court will be paid from the Settlement fund pursuant to a motion for an award of attorneys' fees to be filed by Class Counsel. There was no separately negotiated fee to be paid to the attorneys. *Id.* ¶ 16(c).

Third, Plaintiffs and their counsel recommend the Settlement as being fair, reasonable, adequate, and in the best interests of the Class Members. "Great weight" should be accorded to this recommendation of class counsel. *Bell*, 2017 WL 2672073, at *6; *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015). Accordingly, the Court should give an initial "presumption of fairness" to the Settlement. *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2015 WL 4760464, at *6 (N.D. Cal. Aug. 12, 2015); *see also Walsh v. CorePower Yoga LLC*, No. 16-cv-05610-MEJ, 2017 WL 589199, at *10 (N.D. Cal. Feb. 14, 2017)

**c.    The Settlement Does Not Suffer From Any Obvious Deficiencies.**

The Settlement is the product of a thorough assessment and evaluation of the strengths and weaknesses of Plaintiffs' case compared to the benefit to the Class of obtaining recovery without further delay and risk. While Plaintiffs believe they have strong claims under *Tyler*, absent the Settlement Clackamas would continue to contest the claims with the attendant risks to Plaintiffs.  The strength of Plaintiffs' claims is reflected in the Settlement, which provides that eligible claimants may recover up to 100% of the Surplus Proceeds taken by the County, plus accrued interest. In order to negotiate a recovery of 100 cents on the dollar, plus interest calculated from the earliest date for each property (the expiration of the redemption period), Plaintiffs did agree to forego a claim for additional payment for statutory attorney's fees as part of the settlement negotiations. Any attorney's fees will be awarded by the Court from the Settlement Fund pursuant to a motion of Plaintiffs' counsel for an award from the common fund under Ninth Circuit precedent.[3] As to delay, discovery is ongoing and trial will not be held until

---

[3]    Under the Settlement, any award of attorney's fees is capped at 30% of the Settlement Fund. Plaintiffs anticipate that Class Counsel will move for an award of attorneys' fees equal to 25% of the Settlement Fund, in keeping with *In re Bluetooth* and its progeny. *See In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (noting that an award of attorneys' fees equal to 25% of a common fund is "the 'benchmark' for a reasonable award[.]").

the summer of 2026 at the earliest. Any judgment following trial could be subject to appeals and years of additional delay and risk. Accordingly, the Settlement reflects Plaintiffs' informed assessment of the risks generally inherent in litigation, and the specific risks at issue here.

Weighing the benefits of the Settlement with the risks that Plaintiffs face in this action, there are no obvious deficiencies in the Settlement. Further, the Settlement contains no obvious defects of the types that courts have found to preclude preliminary approval such as: unreasonably high attorneys' fees; preferential treatment of the class representative; a deficient notice plan; a burdensome claims procedure; or a plainly unfair allocation scheme or overly broad releases of liability. *See* 4 Newberg on Class Actions § 13:15 (5th ed.) (citing *Pokorny v. Quixtar Inc.*, No. 07–0201 SC, 2011 WL 2912864, at *1 (N.D. Cal. July 20, 2011) (fee concerns); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *12 (E.D. Cal. June 13, 2006) (preferential treatment of class representatives); *Walter v. Hughes Commc'ns, Inc.*, No. 09–2136 SC, 2011 WL 2650711, at *15-16 (N.D. Cal. July 6, 2011) (deficient notice); *Fraser v. ASUS Computer Int'l*, No. C 12–00652 WHA, 2012 WL 6680142, at *3 (N.D. Cal. Dec. 21, 2012) (overly broad releases). The lack of any obvious deficiencies in the Settlement weighs in favor of preliminary approval.

**d.    The Settlement Does Not Improperly Grant Preferential Treatment to The Class Representatives or Segments of the Class.**

The third factor to consider is whether the Settlement grants preferential treatment to class representatives or segments of the Class. The Settlement does not. The method of distribution is designed to compensate all Settlement Class Members based on the Surplus Proceeds generated by the sale of the Eligible Property for which they submit a valid claim. The Class Representative will not be favored or treated differently under that plan. *See* Settlement ¶ 14. Further, this distribution plan has a reasonable and rational basis and weighs in favor of

PAGE 17 - PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT WITH DEFENDANT CLACKAMAS COUNTY

approval.[4] *See In re Zynga Sec. Litig.*, No. 12-CV-04007- JSC, 2015 WL 6471171, at \*12 (N.D. Cal. Oct. 27, 2015). While Settlement Class Members with an interest in a Potential Eligible Property which is not sold by the County before the expiration of the claims period will not be eligible for a payment from the Settlement Fund, they remain entitled to the Surplus Proceeds generated by a sale on the same terms as Claimants regarding Eligible Properties. Additionally, Settlement Class Members with an interest in a Potential Eligible Property that is not sold before the expiration of the claims period gain the benefits of the Settlement without having to pay attorney fees or costs associated with the Settlement.

        **e.**      **The Settlement Falls Within The Range of Possible Approval.**

To determine whether a settlement "falls within the range of possible approval," courts consider "substantive fairness and adequacy" and "plaintiffs' expected recovery balanced against the value of the settlement." *Tableware*, 484 F. Supp. 2d at 1079–80. Even when the settlement amount is small in relation to a possible future recovery, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (quoting *Officers for Justice*, 688 F.2d at 628). The adequacy of the amount offered in settlement "cannot

---

[4]      Plaintiffs may move for a reasonable award to be paid to the Settlement Class Representatives for their service to the Class. Any such award for which Plaintiffs move would be reasonable in relation to the average Class Member's recovery and will not be conditioned upon the Settlement Class Representative's support for the Settlement. Such an award is not disfavored in this District. *See e.g., Granados v. Onpoint Comm. Credit* Union, No. 3:21-cv-847-SI, 2025 WL 1640204, at \*9 (D. Or. June 10, 2025) (noting that while the adequacy of class representatives may be undermined by "incentive awards that are contingent on the named representatives approving class settlement or by disproportionately large incentive awards" the court approved an incentive award of $10,000.) (citations omitted); *Chahalem Phys. Therapy v. Coventry Health Care, Inc.*, No. 3:09-CV-00320-HU, 2014 WL 4373150, at \*10 (D. Or. Sept. 3, 2014) (granting final approval to class action settlement and finding $10,000 incentive payments for class representative reasonable).

be assessed in a vacuum. Rather, it must be considered in light of 'the strength of the plaintiff's case' and the risks in pursuing further litigation." *Viceral v. Mistras Grp., Inc.*, No. 15-CV02198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016); *see also Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012), citing *In re Mego Fin. Corp.*, 213 F.3d at 459 ("[T]he fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment.") The Settlement provides the benefit of $2,466,403.68, representing 100% of the Surplus Proceeds currently held by Clackamas, plus interest, without further risk to the Class, including risks presented by additional developments that could impact the claims, trial, and appeal. The Settlement provides significant relief to the Class now, without further delay and expense. For these reasons, the amount of the Settlement is very much within the "range of possible approval."

## II.    The Court Should Make a Preliminary Determination That The Proposed Settlement Class Satisfies The Standard For Certification Under Rule 23.

To certify the proposed Settlement Class, the Settlement Class must satisfy all four of the requirements of Rule 23(a) and at least one basis for certification under Rule 23(b). *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).

### a.    The Rule 23(a) Requirements Are Met.

#### i.    The Settlement Class is so Numerous That Joinder is Impractical.

The first requirement for maintaining a class action is that its members are so numerous that joinder would be "impracticable." Fed. R. Civ. P. 23(a)(1). This District follows the rule of thumb that "approximately forty members is sufficient to satisfy the numerosity requirement." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307, 314 (D. Or. 2017). There is no hard and fast number, however, and "Plaintiffs need not provide an exact number of class

members, 'so long as there are enough to make joinder impracticable.'" *Moss v. U.S. Secret Serv.*, No. 1:06–cv–3045–CL, 2015 WL 5705126, at *3 (D. Or. Sept. 28, 2015). Plaintiffs alleged that there are "hundreds" of class members affected by the conduct of Clackamas, Multnomah County, Lane County and Yamhill County. Consol. Complaint, ECF 122, ¶ 111. As demonstrated on the list attached as Exhibit 1(A), there are 35 current Eligible Properties and 32 Potential Eligible Properties involved in the Settlement. Many (if not all) of the involved Properties may have more than one interest holder (and therefore more than one Class Member associated with the Eligible Property), the number of Class Members is all but certain to exceed 40 persons. The inclusion of lienholders in the Settlement Class further increases the likelihood that there are more than 40 persons with an interest in the 67 properties involved in the Settlement. *See* Settlement, ¶ 2.

### ii.    Common Issues Exist.

Under Rule 23(a)(2), Plaintiffs must establish that there are "questions of law or fact common to the class." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. at 315. The requirements of Rule 23(a)(2) have "been construed permissively." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011); *Moss*, 2015 WL 5705126, at *3. Accordingly, commonality is "a low hurdle easily surmounted." *Pecover v. Elec. Arts Inc.*, No. C 08–2820 VRW, 2010 WL 8742757, at *13 (N.D. Cal. Dec. 21, 2010). "All questions of fact and law need not be common to satisfy the rule." *Ellis*, 657 F.3d at 981 (quotation marks omitted). Rather, commonality requires the existence of even a single common contention that is capable of class-wide resolution. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *WalMart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). However, the common contention or

contentions necessary to establish commonality must be "apt to drive the resolution of the litigation." *Id*.

Here, Plaintiffs have identified numerous common issues, including the following:

    (a) Whether Defendants' taking of Plaintiffs' and the class members' properties for public use without "compensation first assessed and tendered" violated Art. I, § 18 of the Oregon Constitution;

    (b) Whether ORS 275.275 violates Art. I, § 18 of the Oregon Constitution; and

    (c) Whether Defendants should be enjoined from enforcing ORS 275.275.

Consol. Complaint, ECF 122, ¶ 112. Resolution of these common issues would determine the allegations for the entire Class "in one stroke." *Hurst v. First Student, Inc*., No 3:15-cv-00021-HZ, 2015 WL 6437196, at *3 (D. Or. Oct. 22, 2015) (quoting *Jimenez*, 765 F.3d at 1165). The commonality requirement is therefore satisfied.

### iii. The Settlement Class Representative's Claims Are Typical of Those of The Other Settlement Class Members.

The third requirement is that the "claims … of the representative parties are typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis*, 657 F.3d at 984 (quoting *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992)); *Hurst*, 2015 WL 6437196, at *3; *Freedman v. Louisiana-Pacific Corp*., 922 F. Supp. 377, 399 (D. Or. 1996). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ellis*, 657 F.3d at 984 (quotation marks omitted).

Like commonality, typicality is to be construed permissively: "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also, Sullivan v. Kelly Servs.*, 268 F.R.D. 356, 363 (N.D. Cal. 2010). The "focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Costelo v. Chertoff*, 258 F.R.D. 600, 608 (C.D. Cal. 2009) (quoting *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)). This requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.

The claims asserted by the Settlement Class Representatives are typical of those of the Settlement Class. Plaintiffs allege that the Ferretti Property was foreclosed upon by Clackamas for non-payment of property taxes and that the County sold the property and retained the Surplus Proceeds without affording Christopher Ferretti any procedure by which he could recover the Surplus Proceeds. Consol. Complaint, ECF 122, ¶¶ 33-38. Likewise, Plaintiffs allege that Clackamas foreclosed upon the Dorrell Property and the Ortiz Property for non-payment of property taxes and that Clackamas has retained the Dorrell Property and the Ortiz Property, both of which are more valuable than the tax debts for which they were foreclosed, without compensating Plaintiffs Dorrell and Ortiz for the excess value. These are the same injuries that Plaintiffs allege that Clackamas caused other members of the Settlement Class. Complaint, ECF 122, ¶ 109. Their claims are therefore typical of the Settlement Class.

### iv. The Settlement Class Representative and Class Counsel Can Adequately Represent The Class.

The final requirement of Rule 23(a) is that the representative plaintiffs will fairly and adequately represent the interests of the Class. The relevant inquiries are "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will

the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

*Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020). There are no conflicts between the

Class Representative or Class Counsel, on the one hand, and the Settlement Class on the other.

The interests of all Class Members are aligned in obtaining the greatest possible recover against

Defendants. As set forth above, Class Counsel are experienced class action litigators and have

capably represented the Class. Therefore, the Settlement Class Representative and Class Counsel

can adequately represent the interests of the Settlement Class.

### b.  The Rule 23(b)(3) Requirements For a Settlement Class Are Met.

A class may be certified under Rule 23(b)(3) when: (a) "questions of law or fact common

to the class members predominate over any questions affecting only individual members"; and

(b) the class action mechanism is "superior" to other methods of adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). Both of requirements are satisfied here.

### i.  Common Questions of Law or Fact Predominate.

"The predominance inquiry . . . asks 'whether proposed classes are sufficiently cohesive

to warrant adjudication by representation.'" *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019

(9th Cir. 2011), abrogated on other grounds by *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

"The focus is on the relationship between the common and individual issues." *Id*. (quotation

marks omitted). To ensure that the class action is more efficient than individual actions, Rule

23(b)(3) requires that common issues predominate over issues that are particular to individual

class members. "Predominance exists 'when common questions present a significant aspect of

the case and they can be resolved for all members of the class in a single adjudication.'" *Moss*,

2015 WL 5705126, at *4 (quoting *Hanlon*, 150 F.3d at 1022).

PAGE 23 - PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT WITH DEFENDANT CLACKAMAS COUNTY

Rule 23(b)(3) requires only a showing that questions common to the class predominate, and a plaintiff seeking class certification is not required to prove the answers to such questions will favor the class. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013) ("In other words, they need not, at that threshold, prove that the predominating question will be answered in their favor."). Predominance does not require a plaintiff to show a complete absence of individual issues. Rather, the predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation marks omitted). Predominance is not a matter of "nose-counting, and "more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc*., 835 F.3d 1125, 1134 (9th Cir. 2016).

The common questions of fact and law affecting the Settlement Class predominate over the individual issues. The primary common question of law is whether Clackamas violated the law when it took the Surplus Proceeds associated with Settlement Class Members' properties without providing any means of recovering the Surplus Proceeds. Resolution of that issue for the Settlement Class Representative would settle that question for all Class Members. The only individualized issues that are likely to arise are (1) the calculation of the Surplus Proceeds associated with each Eligible Property; and (2) whether there are any unique defenses that may apply to individual Settlement Class Members. The first question can easily be resolved using publicly-available information regarding the property taxes owed, the proceeds of any sale by the County and the assessed taxable value for the property. This mechanical process has already been done by Clackamas. As to the second issue, there may be Class Members against whom

PAGE 24 - PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT WITH DEFENDANT CLACKAMAS COUNTY

Clackamas may have unique defenses. However, those issues do not predominate over the central issue in the case—whether Clackamas violated the law when it took Settlement Class Members' Surplus Proceeds, or retained their properties without returning the value of the property in excess of the tax debt.

### ii. The Class Action Mechanism is Superior to Other Methods of Adjudication.

Rule 23(b)(3) also requires that the Court determine whether a class action is superior to other methods of adjudication. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022; *see also, Fosbre v. Las Vegas Sands Corp.*, No. 2:10-CV-00765-APG-GWF, 2015 WL 3722496, at *5 (D. Nev. June 15, 2015) ("It is preferable to determine these common questions once, rather than a multitude of times or not at all if the small value of individual recoveries would deter any single plaintiff from bringing suit."). Additionally, "[a] class action is generally superior if it will greatly reduce litigation costs." *O'Shea v. Am. Solar Solutions, Inc.*, 318 F.R.D. 633, 639 (S.D. Cal. 2017). The superiority requirement is satisfied here because there are significant common issues (*i.e.*, whether Clackamas violated the Oregon Constitution by taking surplus equity) that can be most efficiently resolved on a class-wide basis, thereby greatly reducing litigation costs.

## III.    The Form and Method of Notice Should be Approved.

Plaintiffs also request that the Court approve the form and content of the proposed Notice to the Settlement Class, which is attached as Exhibit 1(B). Where—as here—the Court will likely be able to approve the proposed settlement and certify the class, the Court "must direct

notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]." Fed. R. Civ. P. 23(e)(1)(B); *see also* Fed. R. Civ. P. 23(c)(2)(B).

Rule 23(c)(2)(B) provides various requirements for the method and content of the notice. Regarding the method, it provides that the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It further states that "notice may be by one or more of the following: United States mail, electronic mail, or other appropriate means." *Id.* As to contents, Rule 23(c)(2)(B) provides that the notice must state in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* Courts have held that, "[a]lthough that notice must be 'reasonably certain to inform the absent members of the plaintiff class,' actual notice is not required." *Ontiveros v. Zamora*, 303 F.R.D. 356, 367 (E.D. Cal. 2014) (quoting *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004); *see also* Fed. R. Civ. P. 23(c)(2)(B) (describing specific information to be included in the notice).

The proposed Notice satisfies all of these requirements. As to content, it apprises Class Members of the nature of the case, the definition of the Settlement Class to be certified, the class claims and issues, and the claims that will be released. Exhibit 1(B), pgs. 1, 4-8. It describes the

PAGE 26 - PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT WITH DEFENDANT CLACKAMAS COUNTY

settlement and potential recovery for each claim made, that the parties disagreed regarding whether any damages were recoverable if the claims were brought to trial, and the purpose of the settlement. *Id.*, pgs. 4-7. The Notice further identifies the attorney's fees provision, explains the claims process, and advises the binding effect of a judgment on Settlement Class Members. *Id.*, pgs. 6-9. It explains to Class Members that they may enter an appearance through counsel, how they may opt out or object to the Settlement if desired, and how to submit a claim. *Id.*, pgs. 6-8. It includes the names, addresses, telephone numbers, and website of the Claims Administrator[5] and contact information for Lead Counsel. *Id.*, pgs. 8, 10. It identifies the date, time, and location of the Final Approval Hearing, and how to check the status of that hearing in the event of any changes. *Id.* pgs. 2, 9-10. Finally, it includes the deadlines for submitting a Claim Form, any objections to the Settlement, the Plan of Allocation, or to the requested attorney's fees and expenses. *Id.*, pg. 2. In short, the Notice's disclosures are thorough, and they satisfy the content requirements of Rule 23 and due process.

As to the method of notice, the Claims Administrator will mail the Notice to all Class Members at their last known address from public records including those provided by Defendant and will take reasonable efforts to contact any Class Members with outdated addresses. Settlement ¶ 24. In addition, the Claims Administrator will publish the Summary Notice via print

---

[5]    Plaintiffs also request that the Court approve the appointment of Kroll Settlement Administration as Claims Administrator. Kroll has extensive experience serving as the claims administrator in class actions, and its competence has been recognized by courts nationwide. *Casey v. Doctor's Best, Inc.*, No. 8:20-CV-01325 JLS JDE, 2022 WL 1726080, at *12 (C.D. Cal. Feb. 28, 2022) ("The Court is satisfied that Kroll's 50 years of experience and involvement in over 3,000 class settlements indicate that Kroll is a suitable third-party claims administrator."); *Miles v. Medicredit, Inc.*, No. 4:20-CV-1186-JAR, 2022 WL 3643669, at *2 (E.D. Mo. Aug. 23, 2022); *In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, No. 14-MC-2548 (VEC), 2022 WL 1043672, at *3 (S.D.N.Y. Jan. 13, 2022); *Walls v. Sierra Pac. Mortg. Co., Inc.*, No. 1:19-CV-00595-GLR, 2021 WL 6931470, at *2 (D. Md. Aug. 19, 2021).

and online media. *Id.* ¶ 26. Clackamas will publish the Summary Notice in its regular publications, newsletters and on its website. *Id.* The Claims Administrator will also create a dedicated website for the Settlement. *Id.* ¶ 27. The website will, among other things, contain the Class Notices, Claim Forms, Settlement Agreement and relevant pleadings and motions filed in the litigation. The Defendant and Plaintiffs' Counsel shall establish links on their websites to the settlement website. *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiffs ask that the Court enter an Order in the form submitted herewith and agreed to by the settling parties granting preliminary approval to the Settlement so that notice of the terms of the Settlement may be given to Settlement Class Members and that the Court schedule a hearing to consider: (1) final approval of the Settlement; (2) certification of the Settlement Class; (3) Class Counsel's request for fees, costs and expenses, and a proposed service award to the Class representative; (4) entry of final judgment; and (5) any other matters the Court may deem appropriate.

DATED this 5th day of November, 2025.

Joseph C. Kohn
(admitted *pro hac vice*)
William Hoese
Zahra R. Dean (admitted *pro hac vice*)
KOHN SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 238-1700
jkohn@kohnswift.com
zdean@kohnswift.com
whoese@kohnswift.com

*Proposed Lead and Class Counsel for Plaintiffs*

David H. Fink
Nathan J. Fink (admitted *pro hac vice*)
David A. Bergh
FINK BRESSACK
38500 Woodward Avenue, Suite 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
dbergh@finkbressack.com

*Proposed Lead and Class Counsel for Plaintiffs*

/s/ David F. Sugerman
David F. Sugerman, OSB No. 862984
Nadia H. Dahab, OSB No. 125630
SUGERMAN DAHAB
101 SW Main Street Ste. 910
Portland, OR 97204
Tel: (503) 228-6474
david@sugermandahab.com
nadia@sugermandahab.com

*Proposed Liaison and Class Counsel for Plaintiffs*

Gregory P. Hansel (admitted *pro hac vice*)
Shana M. Solomon
Elizabeth F. Quinby (admitted *pro hac vice*)
Michael D. Hanify
Kat Mail (admitted *pro hac vice*)
PRETI FLAHERTY BELIVEAU
& PACHIOS, CHARTERED, LLP
One City Center
P.O. Box 9546
Portland, ME 04112
Tel: (207)791-3000
ghansel@preti.com
ssolomon@preti.com
equinby@preti.com
mhanify@preti.com
kmail@preti.com

*Proposed Lead and Class Counsel for Plaintiffs*